IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA WARNER, | ) | CASE NO.  1:06CV2719 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| v. | ) | |
| | ) | |
| PIPELINE DEVELOPMENT CO., | ) | **MEMORANDUM OF OPINION** |
| | ) | Docket #36 |
| Defendant. | ) | |

  This case is before the magistrate judge by consent.  Pending is the motion of defendant,

Pipeline Development Co. ("Pipeline"), for summary judgment (Doc. 36).[1]  Plaintiff, Patricia

Warner ("Warner"), opposes defendant's motion (Doc. 38).  For the reasons stated below, the court

grants defendant's motion in part and denies it in part.

I.  Background

  The court views the facts, as it must, in the light most favorable to the party opposing the

motion for summary judgment.  Plaintiff alleges or does not deny the following facts.

  Pipeline has employed Warner for seven years.  Prior to her employment with Pipeline,

---

[1] Pipeline's motion requests summary judgment as to all plaintiff's claims.  The motion, however, contains no citation of law or analysis with respect to Warner's cause of action for intentional infliction of emotional distress.  The court finds, therefore, that Pipeline has not carried its burden of proof with respect to that cause of action.

Warner worked at a series of unskilled jobs until she trained as a machinist.  While working at Atlantic Tool and Die, she used automatic machines to create welds and became interested in welding.  A temporary agency then placed her with Pipeline.  After a probationary period, Pipeline hired her on a permanent basis as an assembler.  Warner advanced through a series of jobs with Pipeline, generally receiving evaluations of 4 on a 6-point scale.  At one point, she asked if she could work overtime on Sundays but was told that only welders and machinists could work such overtime.

At some point, Pipeline posted an opening for a materials handler in the shipping department.  This position did not require lifting objects heavier than those Warner lifted in her then-current position as an assembler.  Warner expressed an interest in the position and notified Pipeline that she would be applying for it, but Pipeline never interviewed her for the position.  When she asked why she was not interviewed, Mary Smith ("Smith"), the Safety Director at Pipeline, told her that she "wasn't strong enough."  Complaint, Doc. 1, p. 6.  Warner admits that some of the materials were too heavy for her to lift safely by hand, but she also noted that heavier objects were lifted by cranes.  Warner Depo., Doc. 36, Exh. A, pp. 60-62.  *Id.*  at 64.  Warner does not know how much the position of materials handler paid.  She alleges that the "word on the floor" is that the job eventually went to the brother or brother-in-law of a female employee at Pipeline.  *Id.* at 45-46.

Warner expressed an interest in becoming a welder in March 2001.  She and two male employees took a welding test offered by Pipeline, and an independent evaluator gave her a passing grade on the test.  About a week later, however, Herbert Cortez ("Cortez"), a plant supervisor at Pipeline, told her that the grading company had "messed up" the scores and that the scores of all three persons who had taken the test would be discarded.

2

Warner began taking welding courses at Lorain Community College to pass the welding test. Warner paid 10% of the cost of her welding courses; Pipeline paid the other 90% of their cost. Warner eventually earned her welding certificate, and Pipeline employed her as a "B" welder. When Warner again asked if she could work Sunday overtime, she was told that only "A" welders could work such overtime. She also alleges that Cortez told her on about ten occasions, "You're a woman. You need at least one day's rest." Warner Depo. at 60-62. Pipeline eventually offered Saturday and Sunday overtime to Warner, but she responded that she could not work such overtime because it conflicted with taking her parents to Amish country and with church attendance. *Id.* at 57-58, 60-61.

About January 2004 a position as a chucker opened at Pipeline. Warner told her supervisor that she was interested in applying for the open position. According to Warner, her supervisor told her that she had to have special training for the position, so Warner did not apply for it. Warner alleges that the position was given to a male who did not have the training Warner was told she needed.

Warner was not given shower facilities to use after her shift even though male welders had access to such facilities after their shift. Warner had access to a female restroom away from the shop floor with washing facilities but no shower facilities. Eventually, Warner suffered an injury and took leave in January 2006 pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA"). Pipeline had not provided a shower for female employees at the time she took her FMLA leave.

On October 4, 2005 Warner filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Warner alleged that Pipeline violated the Equal Pay Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") because Warner and other

3

women were denied overtime opportunities, denied training, denied working tools, denied hire into other positions, subjected to different terms and conditions of employment than men, and subjected to harassment on account of sex.  *See* Determination, Doc. 38, Exh. B, p. 1.  On May 15, 2006 the EEOC determined that it could not conclude that there was merit to any of Warner's charges with the exception of her charge that women at Pipeline were subjected to different terms and conditions of employment than men in that men but not women had access to shower facilities.

Warner filed this cause of action on November 10, 2006.  Warner alleges disparate treatment and harassment on the basis of sex in violation of Title VII and Ohio common law.  She also alleges intentional infliction of emotional distress.  Pipeline denies these charges and now moves for summary judgment as to all claims in Warner's complaint.

II

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper

4

summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *id.*, or by any other evidentiary material admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962).  In addition, the Court "does not weigh the evidence or make credibility determinations." *Id*.  However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *Id.* at 251.

III

Warner alleges that Pipeline treated her differently than other employees because of her sex in violation of Title VII.  Warner also alleges that comments by co-workers created a hostile work environment in violation of Title VII.

*A.       Disparate treatment*

Warner alleges that Pipeline treated her differently than other employees because of her sex in violation of Title VII.  Title VII prohibits employers from discriminating against employees on the basis of sex:

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

A plaintiff who alleges disparate treatment under Title VII must produce direct evidence or indirect evidence that sex played a role in the challenged employment decision.  *See Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Kocak v. Cmty. Health Partners of Ohio, Inc.,* 400 F.3d 466, 470 (6th Cir. 2005).  "Evidence of discrimination is not considered direct evidence unless a [gender-based] motivation is explicitly expressed."  *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006).

If a plaintiff chooses to present indirect evidence of discrimination, the plaintiff generally uses the burden-shifting approach first described in *McDonnell Douglas Corp. v. Green*, 441 U.S. 792 (1973); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992).  To establish a *prima*

6

*facie* case of gender discrimination using indirect evidence, a plaintiff must show that "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably."  *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).[2]  The adverse employment decision complained of must be a materially adverse change:

> An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions.  When a reassignment rises to the level of a constructive discharge, however, the reassignment is an adverse employment action.  For a transfer or reassignment to amount to a constructive discharge, its conditions must be objectively intolerable to a reasonable person.  An employee's subjective impressions as to the desirability of one position over another are not relevant.

*Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (quoting *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996) (emphasis omitted)) (other citations omitted).

"Similarly-situated" employees must be

> similarly-situated in all respects.  Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Policastro*, 297 F.3d at 539 (citations omitted).

If plaintiff succeeds in establishing a *prima facie* case, the burden of going forward then

---

[2]  Pipeline tries to limit "adverse employment decision" largely to a failure to promote and supports this position by quoting the statement of the *prima facie* case from *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004), a case involving a failure to promote.  Merely because one case deals only with the adverse employment action of a failure to promote, other cases, including this one, are not thereby similarly limited in scope.

shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's [discharge]."  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (quoting *McDonnell Douglas*, 411 U.S. at 802).  Once defendant articulates a legitimate business reason for the negative employment action, the plaintiff has the burden of proving by a preponderance of the evidence "that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination."  *McDonald*, 898 F.2d at 1160 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Although the burden of production shifts, plaintiff always retains the burden of persuading the trier of fact of intentional discrimination.  *Burdine*, 450 U.S. at 254-55; *Chappell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir. 1986).

Warner alleges that Pipeline treated her differently because of her sex in six ways.  The court will examine in turn the merits of Warner's arguments with respect to each of these allegations.

1.    *Change of position to materials handler*

Warner alleges Pipeline discriminated against her in the selection of an individual to fill the open position of materials handler.  She does not allege that she applied for this position.  Rather, she contends that she "was denied an opportunity to bid for the position [of materials handler] and the position was subsequently filled by a male employee . . . ."  Opposition Br., Doc. 38 at 7.  To support her contention that she was denied an opportunity to bid for the position, she quotes Smith, a person who was not a decision-maker in considering internal applications for materials handler,[3]

---

[3]  Warner asserts that Smith was involved in decisions regarding Warner's various attempts to apply for new positions within Pipeline.  Opposition Br., Doc. 38 at 6.  She does this by quoting Smith's testimony at Smith Depo. at 6 to the effect that Smith does hiring as part of her human resources duties.  But as Smith makes clear in her deposition, internal position changes are considered "placement," while "hiring" consists of taking on personnel from outside the company.  Smith is only involved in hiring from outside the company, not in placement within the company.  Smith also testified that she has no role in deciding who receives Sunday overtime or in decisions

8

as saying that the job would be "too hard" for her.  Warner adds that Dave Kruzer ("Kruzer"), the

plant manager, heard Smith's remark.  Warner does not explain how this denied her an opportunity

to apply.[4]  Thus, Warner's argument consists of a claim that she was denied a position for which she

never applied.[5]

Warner's contention that the position of materials handler was filled by a male is supported

by hearsay and speculation.  The only evidence in the record regarding the identity of the individual

who filled the position of materials handler is found in Warner's deposition:

> Q.     Who got the shipping position that you're referencing?
> A.     Julie Teal's brother-in-law or brother.
> Q.     But do you really know if that's Julie Teal's brother-in-law or are you just
> speculating?
> A.     They say his name is Tim, I believe.  I'm not sure.
> Q.     Do you know that it's really Julie Teal's brother-in-law or is that just a guess?
> A.     Brother.
> Q.     It's his brother--her brother?
> A.     One of the two.
> Q.     Are you sure about that?
> A.     No, that's what they said.
> Q.     Who's they?
> A.     The men out on the floor.
> Q.     What men on the floor?
> A.     The workers.
> Q.     What workers?  I need names.
> A.     I'm sorry.

regarding internal promotions or position changes at Pipeline.  *See* Smith Depo., Doc. 36, Exh. C,
pp. 5, 40-45, 55-57.

[4]  As Smith's remark was allegedly made *after* Warner discovered that she had not been
interviewed for the position, she can hardly implying that Smith's comment somehow influenced
Kruzer not to interview Warner.

[5]  Warner is not alone in relying on immaterial arguments.  Pipeline makes much of the fact
that in deposing Warner it discovered that her motive in seeking a number of positions at Pipeline
was merely to obtain broad experience to enable her to move up in the company.  As Pipeline had
no knowledge of Warner's motives when she expressed interest in various jobs, her motives in
seeking those jobs has no relevance to this case.

9

> Q.     If you have them.
> A.     Mack Damron, I believe, Jerry Tuck.
> Q.     All right.
> MR. PULITO:  Do you want any more names?
> Q.     I'm sorry, do you know any more names?
> A.     No.
> Q.     They all told you this position went to Julie Teal's brother, correct?
> A.     Brother or brother-in-law.

Warner Depo. at 45-46.

Warner does not cite this deposition testimony in her opposition brief.  Instead, Warner asserts, "[T]he position was filled by a male individual . . . nor can Defendant show that the position was *not* filled by a male employee," Opposition Br., Doc. 38 at 7, then reasons as follows:

> Even though Warner could not give the exact name of the individual who received the position when asked, although she was certain it was the male relative of another employee, Ms. Warner was one of the few female employees ever to work for Defendant. From Ms. Smith's recollection, Defendant has only employed five (5) female employees in the shop.  (Mary Smith Depo. 59-62)  While employed in the shop, Kim was employed in cleaning and "taking care of inventory."  (Mary Smith Depo. 61.)  Amanda's job duties included emptying metal chips with a fork truck and taking out garbage with the fork truck. (Mary Smith Depo. 61.)  Jane was hired after Ms. Warner took leave.  The women who were, at one time, employed in the shop never received the position in shipping, making it reasonable to infer that the position was filled by a male employee at Pipeline.

*Id.* at 7.  Assuming that Warner herself is a fourth female shop employee, this leaves an unidentified fifth female shop employee.  But even if this fifth woman could be excluded as the new materials handler, what remains would still be speculation.

A party opposing a motion for summary judgment may not build a *prima facie* case upon speculation:

> Rule 56, Fed.R.Civ.P., is clearly intended to be used to pierce the allegations of the pleadings and allow the trial court to dispose of the case in advance of the hearing on the merits when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact.  See, Advisory Committee Note of 1963 to Subdivision (e).  The objective is to separate the sham and insubstantial from the real and genuine issues of fact.  Accordingly, where the movant brings forward and supports

10

his motion for summary judgment, his opponent may not rest merely upon his pleadings but rather must come forward to show genuine issues of fact.  Mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden.

*Bryant v. Com. of Ky.*, 490 F.2d 1273, 1274-75 (6th Cir. 1974).  Warner charges that Pipeline discriminated against her by not giving her a job for which she never applied, then proves that this was discrimination by guessing that a similarly-situated male must have filled this position.  This is not sufficient to establish a *prima facie* case of discrimination.

    2.      *Discarding the results of the welding test*

Warner asserts that Pipeline discriminated against her when it discarded the results of the welding test that she and two males took.  Although Warner admits that she has no evidence that Cortez lied when he told her that the independent evaluator had "messed up" the scores, Warner Depo. at 50-51, she supports her belief that Cortez's explanation was untrue by pointing to Cortez's refusal to show her "the paperwork" at her request.  *Id.*  As Cortez's refusal could be due to any number of reasons--including a belief that Warner was impertinent in asking for proof that he was not lying--Cortez's failure to show Warner "the paperwork" is indicative of nothing.  Thus, Warner fails to provide evidence to support her allegation that Pipeline's alleged legitimate business reason for discarding the scores was mere pretext.

Moreover, even if Warner were able to prove that Pipeline was lying to her about the validity of the test results, this would not dispose of the matter.  Warner does not allege that she was treated differently than the two males who also took the test.  That is, she does not allege that their scores were counted although hers were not.  Nor does she allege that disregarding the test results offered any specific advantage to the males.  Absent an allegation that similarly-situated non-protected employees were treated more favorably than she, Warner has no hope of establishing a *prima facie*

11

case on the basis of this incident.

> 3.    *Warner was denied overtime opportunities*

Warner alleges that Pipeline discriminated against her because of her sex when it refused to give her overtime on Sunday.  Warner presents three pieces of evidence in support of this allegation. First, although she was told that only welders and machinists could earn Sunday overtime, she testified that when she went to the worksite one Sunday she found "Nelson," who was neither a machinist nor a welder, working.  Second, Warner testified that Cortez, who is a decision-maker regarding who is given overtime, told her on about ten occasions in response to her requests for overtime, "You're a woman.  You need at least one day's rest."  *Id.* at 60-62.  Third, when she became a "B" class welder, she was told that only "A" class welders could earn Sunday overtime.

Cortez's explanation as to why Warner was not considered for overtime is, by itself, direct evidence of discrimination.  Both the presence of "Nelson" at work on Sunday and the explanation that only "A" class welders rather than welders generally could earn overtime have some probative value in demonstrating that Pipeline's explanations about overtime were a pretext for discrimination. Consequently, Warner has established a *prima facie* case of discrimination and has provided some evidence that Pipeline's claimed legitimate reasons for the negative job action are pretextual.

Pipeline's response to Warner's allegations is threefold.  First, Pipeline notes that when Warner was offered overtime, she turned it down.  Second, Pipeline avers that it offered Warner more overtime than it offered 70% of its other employees.  Both of these responses are beside the point.  That Warner declined overtime or that Pipeline offered Warner more overtime than other employees does nothing to avoid or ameliorate Pipeline's liability if it failed to offer overtime on any occasion for a discriminatory reason.

12

Pipeline's third response to Warner's allegations is that Warner's claim on this issue is barred by the statute of limitations. Title 42 U.S.C. § 2000e-5(e)(1) ("§ 2000e-5(e)(1)") "specifies with precision" the prerequisites that a Title VII plaintiff must satisfy before filing suit. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101. 109 (2002) (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974)). A plaintiff usually must file a timely charge of discrimination with the EEOC before filing a Title VII lawsuit. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 407 (6th Cir. 1999). In deferral states such as Ohio, § 2000e-5(e)(1) requires plaintiffs to file a complaint with the EEOC within 300 days after the occurrence of the allegedly unlawful employment practice. *National R.R.*, 536 U.S. at 109-10. The limitation period begins to run "[o]nce the employee is aware or reasonably should be aware" of the allegedly unlawful employment decision. *Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001) (quoting *Equal Employment Opportunity Comm'n v. United Parcel Serv.*, 249 F.3d 557, 561-62 (6th Cir. 2001)). "[T]he starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." *Amini*, 259 F.3d 493, 499 (6th Cir. 2001).

Warner does not respond to Pipeline's assertion that the claim that Pipeline discriminated against her when it refused to give her overtime on Sunday is barred by the statute of limitations.[6] Absent a response from Warner and absent evidence to the contrary in the record, the court must assume that Pipeline's defense that this claim is barred by the statute of limitations is meritorious.

---

[6] Pipeline raised this defense for the first time in its Reply. On March 7, 2008, the court ordered Warner to file a sur-reply addressing the merits of Pipeline's statute of limitations defense. The sur-reply was due on March 20, 2008. Warner did not file a sur-reply in response to Pipeline's assertion of the defense.

Warner filed her complaint with the EEOC on October 4, 2005. Thus, all specific instances of discrimination alleged by Warner and occurring *prior to* December 7, 2004 are barred by the applicable limitation period. For this reason, Pipeline's motion for summary judgment is granted with respect to those incidents of failure to offer overtime occurring before December 7, 2005.

        *4.     Warner was paid less than male welders*

Warner further alleges that Pipeline discriminated against her by paying more money to a male employee working in the same position as she. Warner cites the Deposition of Cortez, Doc. 38, Exh. 3, pp. 126-27, 129, to establish the following facts: (1) a male, Timothy Geisel ("Geisel"), was hired as a B-welder on January 10, 2005 at a salary of $15.00 an hour; (2) Warner was hired as a B-welder on August 26, 2005 at a salary of $14.84; (3) over time, the starting salary for each position increases. Warner asserts that the experience required by the two jobs and the responsibilities they entitled were identical, and Pipeline does not deny this assertion. Indeed, Pipeline makes no response in its briefs to Warner's argument.[7]

The facts Warner cites tend to show that she was subject to an adverse employment decision by being paid less than a person hired earlier than she and that a non-protected employee was treated more favorably than she. Pipeline does not argue that she was unqualified for the position of B-class welder. This is sufficient to establish a *prima facie* case of discrimination. Pipeline's briefing provides no legitimate business reason for the discrepancy between Geisel's and Warner's salaries.

---

[7] Attached to Pipeline's Reply is the Supplemental Affidavit of William Smerek ("Smerek aff."). Smerek attests that Geisel was more experienced when he was hired than was Warner and that this was the reason for his higher starting salary. Smerek aff. at 1. Smerek offers no details to support or particularize this assertion. A bare generalization to which an interested party attests, that is lacking supporting detail, and that is not referenced in the briefing is insufficient to carry Pipeline's burden of proof on this issue.

14

For these reasons, Pipeline's motion for summary judgment is denied with respect to Warner's allegation that Pipeline discriminated against her by paying more money to a male employee working in the same position as she.

      *5.*      *Warner was precluded from applying for the position of chucker*

Warner also alleges that Pipeline discriminated against her because of her sex by discouraging her from applying for the position of chucker.  According to Warner, when she asked about the opening, Cortez told her that she had to have special training to bid for the position.  Warner alleges that this was false because Cortez also told her that Pipeline would train the person whom it hired to run the machine used by the chucker.  Finally, Warner alleges that Pipeline hired to fill the position a male who did not have the special training Warner was told she needed.

Pipeline offers two responses to Warner's allegations.  First, Pipeline argues that because Warner never applied for the position, she cannot now claim that Pipeline discriminated against her by failing to hire her for the position.  Pipeline misses Warner's point.  Warner alleges that her supervisor dissuaded her from applying for the position by lying to her about the position's requirements.  Merely asserting that Warner did not apply for the position does nothing to counter Warner's argument.  Second, Pipeline argues that because Warner does not allege that the position of chucker would have paid more than the position she already held, Warner has not made out a *prima facie* case of discrimination.  Pipeline's argument appears to rest on its mistaken reading of the law that all adverse employment decisions must be a "failure to promote," *supra* at p. 7 n.2, and an unsupported assumption that an increase in pay is a promotion.  In any case, Pipeline fails to cite any law to support its truncated argument and, consequently, fails to show that Warner is unable to

15

establish the existence of an element essential to her claim.[8] Because Pipeline's motion for summary

judgment fails to carry its burden of proof as to this cause of action, Pipeline's motion is denied with

respect to Warner's claim that Pipeline discriminated against her on the basis of sex by discouraging

her from applying for the position of chucker.

> 6.      *Pipeline failed to provide Warner shower facilities although it provided such
>         facilities for similarly-situated male employees*

Warner alleges that Pipeline failed to provide her and other women restroom facilities

comparable to those provided to male employees.  In particular, Warner alleges that although a

women's restroom was available to her, it was located away from the shop floor and it had no

shower for someone who had been welding all day. Pipeline answers that it responded timely to

Warner's complaints about the disparity in facilities and that Warner's cause of action is time barred.

Pipeline asserts, and Warner does not deny, that Warner raised the disparity between

restroom facilities between 2000 and 2002.  Pipeline asserts that, in response to the May 2006

determination by the EEOC, it provided shower facilities for Warner by January 2007 when she took

leave.  A five year delay between complaint and response is not a timely response.

As previously noted, individuals in deferral states such as Ohio must file a complaint with

the EEOC within 300 days after the occurrence of the allegedly unlawful employment practice, and

---

[8] Pipeline asserts in its Reply that "Plaintiff has not refuted that this position did require specialized training . . . ."  Reply at 4.  Had Pipeline's motion contended that the position required specialized training and that Warner erred in saying otherwise and then supported that contention with relevant evidence, this might have some weight.  But Pipeline's motion does not make this contention, much less offer support for it.  Rather, it quotes Warner's deposition as attesting that at some point Cortez told Warner that the position required special training that Warner did not have. This is not the same thing as advancing the quoted position as one's own.  Neither side in this case seems to make its positions known clearly and to support those positions adequately with citations to affidavits, depositions, or other admissible evidence that should have been obtained in discovery.

Warner filed her copmplaint on October 4, 2005.  Thus, all specific instances of discrimination alleged by Warner and occurring prior to December 7, 2004 are barred by the applicable limitation period.[9]  The court grant's Pipeline's motion for summary judgment, therefore, with respect to all alleged discriminatory acts regarding disparate restroom facilities *prior to* December 7, 2004 and otherwise denies Pipeline's motion regarding this cause of action.[10]

B.    *Hostile work environment*

Warner also alleges that she was subjected to a hostile work environment as a result of comments made by her co-workers.  Pipeline responds that Warner fails to establish a *prima facie* case of discrimination due to a hostile work environment because the alleged comments were isolated, not made by decision-makes, and often not reported to supervisors.

A plaintiff alleging discrimination due to the creation of a hostile work environment on account of sex may establish a *prima facie* case by showing the following:

> (1) the sexual harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) the employer knew or should have known of the harassment and failed to take immediate

---

[9] In her response, Warner alleges regarding her complaints about the differences in facilities that "these claims could have been addressed with Mr. Cortez as late as 2004 -- so the claims are not time-barred."  Doc. 38 at 14.  This is not an argument that the limitation period should be tolled on the basis of a continuing violation, as Warner offers no caselaw or reasoning to support her position.  Had she done so, however, it is not clear that the argument would have been successful given the narrow construction courts place on the continuing violation doctrine.  *See discussion at National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002); *Austion v. City of Clarksville*, 244 Fed. Appx. 639, 647-48 (6th Cir. 2007); and *Dendinger v. Ohio*, 207 Fed. Appx. 521, 526-27 (6th Cir. 2006).

[10] Warner concedes that Pipeline has now installed a shower for female employees working on the floor.  She suggests no basis on which a remedy for past discrimination on the basis of unequal facilities is to be fashioned.

17

and appropriate corrective action.

*Hawkins v. Anheuser-Busch, Inc.*, ___ F.3d ___, 2008 WL 423442, at *7 (6th Cir. Feb 19, 2008) (citations omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (holding that a workplace environment is sufficiently hostile to ground a suit for sexual harassment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . "). The standard includes both objective and subjective components: "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir. 1997) (citing *Harris*, 510 U.S. at 21).

Analysis of whether the alleged harassment is objectively "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive working environment'" includes consideration of a variety of factors, including

> the frequency of the discriminatory conduct;  its severity;  whether it is physically threatening or humiliating, or a mere offensive utterance;  and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.  But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 510 U.S. at 23; *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998)

"This is not, and by its nature cannot be, a mathematically precise test."  *Harris*, 510 U.S. at 22.  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."  *Id.* at 23; *see also Abeita*, 159 F.3d at 251.  In alleging a sexually hostile environment, a plaintiff must cite more than simply a single or isolated incident. *Rabidue v. Osceola*

18

*Ref. Co.*, 805 F.2d 611, 620 (6th Cir. 1986), *superceded on other grounds*, *Harris*, 510 U.S. at 21.

Moreover,

> [w]e have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." . . . Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* . . . because of . . . sex."
>
> And there is another requirement that prevents Title VII from expanding into a general civility code:  As we emphasized in *Meritor* and *Harris,* the statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.   The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive-- is beyond Title VII's purview."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris,* 510 U.S. at 21).

"'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Nevertheless, "Title VII comes into play before the harassing conduct leads to a nervous breakdown. . . . So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." *Harris*, 510 U.S. at 22.

The determination as to whether an environment is "hostile" or "abusive" is necessarily fact-specific.  A plaintiff's allegations of abuse were found sufficient to survive a motion for summary judgment where her supervisor made sexual comments which were "commonplace, ongoing, and continual" throughout plaintiff's entire term of employment. *Abeita*, 159 F.3d at 252.  The Sixth

19

Circuit found a hostile work environment as a matter of law where a supervisor looked at plaintiff's breasts and said, "You can rub up against me anytime" and "You would kill me, Marilyn.  I don't know if I can handle it, but I'd die with a smile on my face"; the supervisor put his arm around plaintiff's neck and placed his face against hers, and noticing that she had written "Hancock Furniture Company" on a piece of paper, said, "You left the dick out of the hand"; and the supervisor came behind plaintiff while she was bending over her and said, "Back up; just back up"; where a co-worker addressed plaintiff with "Hey, slut"; where a box was thrown at plaintiff and a worker said, "I'm sick and tired of these fucking women"; and where someone glued office supplies to plaintiff's desk and locked her in her work area.  *Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999).  Allegations of a hostile environment were sufficient to withstand defendant's motion for judgment notwithstanding the verdict after a jury trial where a supervisor presented evidence of approximately six sexual or racial statements over plaintiff's twenty-three month employment, presented testimony that sexually disparaging remarks were repeated frequently, and presented the testimony of co-workers that the supervisor's remarks impacted the office and affected plaintiff's work.  *Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413-15 (10th Cir. 1997) (cited by *Abeita*, 159 F.3d at 251).  Plaintiff's allegations of a hostile environment were deemed sufficient to overturn the district court's grant of summary judgment to defendant where rejection of sexual advances by a supervisor on a business trip prompted the supervisor to engage in a course of conduct which involved unwarranted criticism of plaintiff's work, repeatedly ridiculing her in a manner which obviously had a sexual connotation to it, spreading sexual rumors, and withdrawing job responsibilities.  *Damrow v. Holbrook-Patterson*, 951 F.2d 348 (6th Cir. 1991).

On the other hand, the Sixth Circuit upheld a determination that plaintiff had failed to

20

demonstrate a hostile work environment where plaintiff alleged that co-workers used "the f-word," that they "took the Lord's name in vain," and that one co-worker continuously made sex-related comments and talked about what sleeping with different women would be like. *Knox*, 375 F.3d 451. The court also upheld a lower court's determination that a supervisor's telling several dirty jokes in plaintiff's presence, his verbal sexual advance related to plaintiff's evaluation, his one-time reference to plaintiff as "Hot Lips," and his isolated comments about plaintiff's state of dress were insufficient to establish a hostile work environment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Similarly, the Sixth Circuit overturned a jury verdict in favor of plaintiff and found the alleged abuse to be insufficient to impose liability where, over a period of four months, employees made allegedly sexually harassing comments at meetings held every two weeks at which eight of the ten participants were men. *Black v. Zaring Homes, Inc*., 104 F.3d 822, 823-24 (6th Cir. 1997). The Sixth Circuit overturned a jury verdict in favor of plaintiff because it found no hostile or abusive environment where, over seven months, a supervisor called plaintiff "pretty girl" on more than one occasion, made suggestive sounds, and made seven other suggestive remarks, including suggestions that plaintiff was making him "hot." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995) (cited with approval by the court in *Abeita*). The Sixth Circuit upheld summary judgment for the defendant, finding plaintiff's allegations insufficient to establish a hostile or abusive environment, where the manager of a restaurant harassed plaintiff with a series of sexually suggestive and personal comments and leering looks, called plaintiff at her home and told her that he missed her, and inappropriately touched her breast when he removed and replaced a pen from her front shirt pocket. *Stacy v. Shoney's, Inc.*, 142 F.3d 436 (6th Cir. 1998).

Warner alleges that the following incidents created a hostile working environment at

Pipeline:  (1) while he was looking at Warner, co-worker Roger Diotte ("Diotte")[11] said that every company needs a whore; (2) co-worker Nalin Castro ("Castro")  made comments about Warner's underwear and genitalia on an unspecified number of times, and (3) co-worker Jose Ruiz ("Ruiz") made pervasive comments to Warner.  Warner concedes that when she reported Diotte's comment to Smith, Smith told her that she would talk to him about it.  Warner does not know if Smith ever talked to Diotte about the matter or if Diotte was reprimanded for the comment.  Warner states that when she reported Castro's remarks to Kruzer, he investigated, reprimanded Castro, and placed a notation about the incident in Castro's file.  *See also* Doc. 36, Exh. D.  Warner admits that she told Kruzer that she did not want Castro suspended or fired because of the incident, but contends she was afraid that she would have been fired if she insisted on a more severe punishment for Castro than a reprimand.  Finally, Warner states that she did not tell anyone about Ruiz's comments because she was afraid of retaliation.

It is by no means clear that the incidents in question were sufficiently severe or pervasive to have created a hostile work environment.  But even if the court assumes that a hostile work environment existed, Warner fails to establish a *prima facie* case of discrimination because she does not show that Pipeline failed to take immediate and appropriate corrective action in the case of Diotte and Castro or that Pipeline knew or should have known of the harassment in the case of Ruiz:

> Once a hostile work environment is established, an employee alleging sexual harassment by a coworker must still establish that the employer is liable because it knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action.  *EEOC*

---

[11] Pipeline makes much of a supposed change of testimony at Warner's deposition regarding which individual made the comment to Warner, Diotte or Smith.  *See* Warner Depo. at 66-74.  Jumping from confusion in the deposition regarding the source of the comment at issue to an accusation that Warner contradicted herself is not productive and has no impact on the issue of summary judgment.

> *v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir.2001).  This court held in *Blankenship v. Parke Care Ctrs., Inc. .*, 123 F.3d 868 (6th Cir.1997), that when coworker harassment is at issue, an employer is not liable for "mere negligence," but is liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* at 872-73.

*Hawkins*, ___ F.3d at ___, 2008 WL 423442 at *13.  Warner does not know what corrective action Pipeline took in the case of Diotte, and she can hardly complain that the corrective action taken in Castro's case was insufficiently severe when she told Kruze that she did not want Castro suspended or terminated.  Warner also fails to explain how Pipeline should have known of Ruiz's comments given Warner's failure to report them to the appropriate person.  Because Warner does not establish that Pipeline knew or should have known of the alleged harassment or failed to take prompt and appropriate corrective action, the court grants Pipeline's motion for summary judgment with regard to Warner's cause of action for subjecting her to a hostile work environment because of her sex.

D.      *Pipeline's assertion of the after-acquired evidence doctrine*

Pipeline contends that even if it fails to prevail on any of Warner's causes of action, the court should nevertheless dismiss Warner's complaint *en toto* on the basis of the after-acquired evidence doctrine.  According to Pipeline, Warner lied about having a high school degree when she applied for a position at Pipeline and lied about having welding experience when she bid on an open welding position.   Pipeline contends that it would not have hired her had it known of Warner's misrepresentations.  Warner denies that the after-acquired evidence doctrine is applicable to this case.

The after-acquired evidence doctrine provides that when an employee has been terminated for illegitimate reasons and an employer discovers evidence of wrongdoing not known at the time of termination and which would have been sufficient to cause the termination of the employee, a

court may on equitable grounds limit the remedies available to the terminated employee.  *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360-63 (1995); *see also Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996).  Where employee misconduct would have resulted in termination for cause, " as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy."  *McKennon*, 513 U.S. at 361-62.

Pipeline's assertion of the after-acquired evidence doctrine in inapt for two reasons.  First, the doctrine is applied only in cases of termination.  Pipeline cites no cases in which the doctrine was applied when the employee-plaintiff had not been terminated.  Pipeline has not terminated Warner.  Second, the doctrine acts in equity to limit a plaintiff's remedies, not in law to absolve a defendant of liability.  *See discussion at id.*, 513 U.S. at 360-61.  Thus, Pipeline's request that it be granted summary judgment on the basis of the doctrine asks for a result outside the doctrine's scope.  For these reasons, the court rejects Pipeline's argument that it be granted summary judgment as to all Warner's causes of action on the basis of the after-acquired evidence doctrine.

## XI.  Conclusion

For the reasons given above,  the court denies Pipeline's motion for summary judgment with regard to Warner's claims that Pipeline discriminated against her because of her sex by paying her less than a similarly-situated male employee, by failing to offer her overtime on or after December 7, 2004, by discouraging her from applying for the position of chucker, and by providing restroom facilities inferior to those provided similarly-situated male employees on or after December 7, 2004. The court also denies Pipeline's motion as to Warner's cause of action for intentional infliction of

emotional distress.  The court grants Pipeline's motion as to all other causes of action.

**IT IS SO ORDERED.**


Dated:  April 2, 2008                    /s/ Nancy A. Vecchiarelli
                                              Nancy A. Vecchiarelli
                                              United States Magistrate Judge